UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>   Plaintiff, )<br>)<br>v. )<br>)<br>DOMINIQUE G. COLLIOT, )<br>   Defendant, ) | Case No. 1:16-CV-01281 |

**UNITED STATES' ADDITIONAL MEMORANDUM**

The United States of America, files this Additional Memorandum pursuant to the Court's May 16, 2018 Order (ECF. No. 62) to address why the Court should not dismiss this case with prejudice based on its ruling.

  **I.**  **Summary of Prior Proceedings**

By way of background, the United States sued Dominique Colliot for a judgment and to collect 16 different penalties assessed against him for willful failure to file Form TD F 90-22.1 on various foreign bank accounts (FBAR penalties) in which he had an interest or controlled between 2007 and 2010. On October 26, 2017, the Court entered an Amended Scheduling Order *(ECF No. 48)* that gave the parties until October 30, 2018, to complete discovery (*Id.* at 7), and December 4, 2018, to file dispositive motions (*Id.* at 8.)[1]

Before the completion of discovery, Colliot moved for summary judgment attempting to have the entire case dismissed with prejudice without providing support to dismiss all of the FBAR

---

[1] Fundamental fairness requires that the United States be allowed to conduct discovery and file its own Motion for Summary Judgment (if it decides to do so) up to the deadlines set by the Court. The United States will certainly take the deposition of Colliot and perhaps others. The Court has not made a determination of whether Colliot acted willfully and should not until discovery is completed.

1

penalties.  Colliot's motion addressed only one issue - whether the penalties assessed against him were in violation of the maximum penalty allowed by Treasury Regulation 31 C.F.R. § 1010.820 (Treas. Reg. § 1010.820) despite Congress having subsequently amended 31 U.S.C. § 5321, the governing statute, increase the maximum penalties allowed for the periods at issue.  Colliot's motion only identified one of the 16 penalties alleged in the Complaint that exceeded the maximum penalty allowed under the regulation.  Specifically, the $323,773 FBAR penalty assessment relating to the UBS SA account for 2007.  Colliot did not contend that he lacked an interest in, or control over, the foreign accounts alleged in the Complaint.  Similarly, Colliot's motion did not address whether his failure to file the necessary forms was willful, and he did not argue that the IRS failed to consider the evidence against him when deciding the amounts it assessed.

The United States responded, arguing that Congress had amended the controlling statute allowing for larger maximum penalties, and therefore, Treas. Reg. § 1010.820(g)(2) was no longer the controlling law with respect to the maximum penalties that could be assessed.  The United States also presented significant evidence demonstrating that Colliot had an interest in, or control over, the foreign bank accounts at issue; and that his failure to file the required forms was willful. (*See ECF No.57, United States' Response, at pp.13-17).*  Finally, because judicial review of FBAR penalties involves two distinct elements, along with two standards of review, [2] the United States

---

[2] The first element is the existence of a violation, which is reviewable by a court under a *de novo* standard. *See* 5 U.S.C. § 706 ("the reviewing court shall decide all relevant questions of law"); *United States v. Williams*, No. 1:09-CV-00437, 2014 WL 3746497 (E.D. Va. June 26, 2014). The second element is the amount of the penalty, which is left to the discretion of the Secretary, subject to maximum amounts.  The amount of the penalty is reviewable under an abuse of discretion standard. *Moore v. United States*, 2015 WL 1510007, at **7 -11 (W.D. Wash. Apr. 1, 2015) (holding that the amount of an FBAR penalty assessment is reviewed for abuse of discretion); *See* 5 U.S.C. § 706; *See also Ekanem v. Internal Revenue Service*, 1998 WL 773614, at *1 (D. Md. 1998) (an agency's selection of a penalty is the exercise of a discretionary grant of

presented evidence demonstrating that to the extent that the abuse of discretion standards for judicial review under the Administrative Procedures Act (APA)[3] apply to the discretionary amounts of specific penalties assessed against Colliot by the IRS, the IRS had examined the relevant facts, explained its actions, and there was a rational connection between the facts and the penalty assessments. (*See ECF No.57, United States' Response, Section B at pp.13-17* and *ECF No. 57-3, SOF.*) Colliot failed to object to, or rebut, the majority of material facts established in the United States' Response, thereby preventing summary judgment or dismissal of this case on any of those grounds.[4]

On May 16, 2018, the Court entered an Order agreeing with Colliot that the maximum penalties set forth in Treas. Reg. § 1010.820(g)(2) were not rendered obsolete by the subsequent amendment to 31 U.S.C. § 5321. Consequently, the Court held that the maximum penalty for which Colliot could be held liable is capped by the regulation rather than the higher maximum penalty allowed by the statute,[5] and the amount of any penalty exceeding the regulatory limit was arbitrary and capricious. However, as noted by the Court, Colliot's request to dismiss this case with prejudice is "unsupported." *Id.* at p. 6. In fact, Colliot never cites any authority supporting

---

power, and is to be reviewed only for an abuse under an arbitrary and capricious standard of review).
[3] 5 U.S.C. § 551 et seq; 5 U.S.C. §§ 702, 704 and 706.
[4] Although Colliot's motion is styled as a motion for summary judgment, he requested that the entire case be dismissed with prejudice. In effect, Colliot filed a motion to dismiss. However, the United States has submitted sufficient evidence to demonstrate a question of material fact on these issues, and the standards for dismissal under Rule 12 are even more stringent. When considering a party's motion to dismiss, courts must take the allegations of the complaint to be true. *Carney v. Resolution Trust Corp.*, 19 F.3d 950, 954 (5th Cir.1994). A district court cannot dismiss the complaint unless it appears beyond doubt that the plaintiff can prove no set of facts that would entitle it to relief. *Id. See also Double D Sporting Service, Inc. v. Supervalu, Inc.* 136 F.3d 554, 557 (8th Cir. 1998).
[5] The United States respectfully reserves its right to appeal any of the Court's rulings, findings or orders in this case and files this brief under the law as set forth in the Court's order.

complete dismissal of any penalty at issue. Accordingly, the Court requested briefing on whether there are grounds to dismiss the case.

As explained below, the Court's May 16, 2018 Order affects only two of the 16 penalties at issue, and it leaves the other 14 penalties unaffected. Moreover, the Court did not state that the portion of the penalties falling below the cap in the regulation was arbitrary, capricious or invalid. Finally, to the extent that the APA applies to the amount of the two remaining penalties chosen by the IRS, the agency has already exercised its discretion to assess penalties larger than the applicable cap determined by the Court, and has supplied summary judgment supporting the basis for its decision. Because the Court can simply limit the amount of these two penalties as a matter of law in any judgment it may enter, there is no basis or need for remand of those two penalties to the agency for further decision-making or explanation. In sum, the case should proceed on Colliot's liability for all 16 penalties (albeit with two of them being limited in amount by the Court's Order).

## II.     Fourteen Of Sixteen Penalties Are Within The Limits Set Forth In The Regulation, And Remain Unaffected By The Court's Order

The Court concluded that "the IRS acted arbitrarily and capriciously when it failed to apply regulation 31 C.F.R § 1010.820(g)(2) ***to cap the penalties*** assessed against Colliot." (ECF No. 62, p. 5) (*emphasis supplied*). However, as explained below, 14 of the 16 FBAR penalty assessments against Colliot are within the maximum limits set forth under Treas. Reg. § 1010.820(g)(2), and Colliot's motion provides no basis to dismiss any of these penalties.

Treas. Reg. § 1010.820(g)(2) states that "[f]or any willful violation committed after October 26, 1986 . . . the Secretary may assess upon any person, a civil penalty[] ... not to exceed the greater of the amount (not to exceed $100,000) equal to the balance in the account at the time of the violation, or $25,000." Thus, under the regulation, the maximum FBAR penalty that can be assessed per account or per violation is **$100,000,** or, if the account balance is less than

4

$100,000, the IRS may assess an FBAR penalty equal to the amount of the account balance. Further, a penalty can be assessed in the amount of $25,000 regardless of account balance or violation, and therefore, any FBAR penalty assessment that is less than or equal to $25,000 cannot be in violation of the maximum limits set in Treas. Reg. § 1010.820(g)(2).

During 2007 through 2010, Colliot had a financial interest in, beneficial interest, control and signatory authority over at least eleven foreign bank accounts, including the seven foreign accounts which the IRS made FBAR penalty assessments: (1) **Barclays** in the United Kingdom - three separate accounts ending 6000 "Barclays 1," ending 7622 "Barclays 2," and ending 8820 "Barclays 3"; (2**) UBS AG** in Switzerland; (3**)  Societe Generale** in France - two separate accounts ending 0136 "Societe G 1" and ending 2357 "Societe G 2"; and (4) **Banque Sarasin & Cie**, "Sarasin," in Switzerland. *United States' Statement of Material Facts, Dkt. #57-3, ("SOF") ¶¶ 3, 4, 5 and 12.*[6]  Colliot failed to timely file FBARS for 2007-2010 reporting the Barclays 1, Barclays 2, Barclays 3, UBS, Societe General 1, Societe General 2 and Sarasin accounts despite these foreign bank accounts each having balances exceeding $10,000. *SOF ¶¶ 19, 24-29, 33, 34, 35-39, 43-46, 49, 53-55 and 57.*  The failure to report each account is a separate FBAR violation. Thus, as shown below in Table 1 for 14 of the 16 penalties at issue in this case, the IRS made valid FBAR penalty assessments for each violation or account that was not timely reported by Colliot as follows:

---

[6] Again, Colliot did not dispute any of these facts in his Motion for Summary Judgment.

*Table 1*

| Year | Bank | Maximum balance in account during year | Balance at 6/30 of following year for date of violation | FBAR penalty assessed by IRS | Maximum penalty allowed under Treas. Reg. § 1010.820(g)(2) per Court's Order |
|---|---|---|---|---|---|
| 2007 | Barclays 1 | $389,633 | unknown | $100,000 | $100,000 |
| 2007 | Barclays 2 | $318,848 | unknown | $100,000 | $100,000 |
| 2007 | Barclays 3 | $  8,225 | unknown | $    5,000 | $25,000 |
| 2007 | Yearly Total | | | $205,000 | $225,000 |
| | | | | | |
| 2008 | Barclays 2 | $540,405 | unknown | $ 54,041 | $100,000 |
| 2008 | Societe G. 1 | $278,723 | $142,471.93 | $ 71,236 | $100,000 |
| 2008 | Sarasin | $157,937 | $18,646 | $ 15,794 | $25,000 |
| 2008 | Yearly Total | | | $141,071 | $225,000 |
| | | | | | |
| 2009 | Barclays 2 | $232,731 | unknown | $ 23,273 | $100,000 |
| 2009 | Barclays 3 | $ 16,020 | unknown | $  1,602 | $25,000 |
| 2009 | UBS SA | $115,647 | 0 acct. closed | $ 11,565 | $25,000 |
| 2009 | Societe G 1 | $335,145 | unknown | $ 33,515 | $100,000 |
| 2009 | Societe G 2 | $ 67,300 | unknown | $  6,730 | $67,300 |
| 2009 | Sarasin | $ 52,067 | $24,316 | $ 12,158 | $25,000 |
| 2009 | Yearly Total | | | $ 88,843 | $342,300 |
| | | | | | |
| 2010 | Societe G 2 | $54,000 | unknown | $  5,400 | $54,000 |
| 2010 | Sarasin | $22,124 | unknown | $  5,000 | $25,000 |
| 2010 | Yearly Total | | | $ 10,400 | $79,000 |
| | | | | | |
| | Grand Totals | | | $445,314 | $871,300[7] |

See SOF ¶¶ 24, 31, 33, 41, 43, 51, 53 and 59.

Initially, it is important to note that under Treas. Reg. § 1010.820(g)(2), all of the FBAR penalty assessments in Table 1 under $25,000 are within the limits set forth in the regulation. Additionally, with respect to the Barclays 2 account for 2007-2009, even though the account balances on June 30 were unknown, the highest balance in the account during the years at issue exceeded $100,000, which is the maximum penalty the IRS could have assessed. Because the

---

[7] The IRS could have assessed a maximum aggregate amount of $871,300 but only assessed $445,314 for violations as set forth in Table 1.

6

amount of the FBAR penalty assessments for the Barclays 2 account in 2007 and 2008 were less than $100,000, those amounts are also valid and not do not exceed the cap imposed by Treas. Reg. § 1010.820.[8]  Likewise, because the highest balance in the Societe G 1 account during 2009 year exceeded $100,000, the maximum penalty the IRS could have assessed under the regulation was $100,000.  However, the FBAR penalty assessed for the Societe G 1 account was $33,515 during 2009 and was also within the cap imposed by Treas. Reg. § 1010.820.  In sum, the 14 FBAR penalty assessments listed in Table 1 are within the maximum limits set forth in the regulation, and remain unaffected by the Court's Order.  Thus, the IRS did not act arbitrarily or capriciously with respect to these 14 penalties, and there was no violation of the Administrative Procedures Act regarding the amount of these 14 penalty assessments. At a minimum, these 14 penalty assessments should not be dismissed, and the case against Colliot for them must proceed.

### III. Only Two of Sixteen Assessed Penalties Exceeded the Limits in the Regulation

As explained in Table 2, only 2 of the sixteen penalties at issue in this case exceeded the maximum cap set forth in Treas. Reg. § 1010.820:

*Table 2*

| Year | Bank | Maximum Balance in account during year | Balance as of 6/30 of following year for date of the violation | FBAR penalty assessed by IRS | Maximum penalty allowed under Treas. Reg. § 1010.820 per Court's Order |
|---|---|---|---|---|---|
| 2007 | UBS SA | $523,980 | $646,546 | $323,773 | $100,000 |
| 2008 | UBS SA | $757,567 | 0.00[9] | $ 55,011 | $ 25,000 |
|  | Grand Totals |  |  | $378,784 | $125,000 |

*See SOF ¶¶ 24, 31, 33, and 41.*

---

[8] *See* Table 1, line entries for Barclays 2 account.

[9] The UBS Account had a zero balance in the account as of June 30, 2009, because the account was closed and its funds were transferred to Intersea Assets, Ltd.  Gov. Ex. 18 at DOJ 000855.

However, only the amounts in excess of the maximums set forth in the regulation were held to be arbitrary and capricious by the Court.[10] Based on the Court's ruling, only portions of two FBAR assessments exceeded the maximum amount allowed by law. The remaining portion of these two penalties were not invalidated by the Court's Order, and Colliot has offered no authority or evidence to support invalidating the remaining portion of those two penalties. Furthermore, to the extent that the IRS's decision regarding the amount of the penalties is governed by the APA, there is no basis to remand this case to the agency for further administrative decision-making or proceedings. Here, the IRS has already fully exercised its discretion to impose larger penalties and supplied evidence supporting that decision. Specifically, the IRS has already exercised its discretion and assessed a larger FBAR penalty against Colliot for the UBS account in the 2007 year according its interpretation of the applicable law. However, the Court has ruled, that as a matter of law, the maximum amount that can be assessed is capped at $100,000 as set forth in the regulation. Accordingly, based upon the Court's ruling, the maximum FBAR penalty assessment against Colliot for UBS SA account in the 2007 should be limited to the $100,000 maximum amount for purposes of any judgment ultimately entered by this Court rather than invalidated or remanded. Likewise, the IRS chose to assess a penalty for the UBS SA account in 2008 that exceeded the $25,000 maximum allowed by the regulation, and it should also be limited to that $25,000 maximum for purposes of any judgment ultimately entered by this Court rather than invalidated or remanded.

---

[10] While the United States does not agree that any assessment was arbitrary or capricious or greater than the amount allowed by law, it is using this language to comport with the Court's Order.

While it is common for courts to remand erroneous or insufficient decisions to an agency under the APA when the statute being interpreted is ambiguous, remand is not required on pure questions of law for unambiguous statutes where the agency no longer has any discretion to deviate from the court's ruling. *Citizen Band Potawatomi Indians of Oklahoma v. United States*, 391 F.2d 614, 624, (Ct. Cl. 1967), *cert. denied*, 389 U.S. 1046 (1968) ("In the federal system it has been the usual rule that, where the reviewing court exposes the legal error in the decision of an administrative agency, it should not decide for itself those remaining issues within the agency's special competence, **unless there could be only one answer.** . .").  *See also, Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.* ("If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress."). *Compare Negusie v. Holder*, 555 U.S. 511, 523 (2009) (remanding to the agency question of statutory interpretation where the agency "has not yet exercised its *Chevron* discretion to interpret the statute in question"). Here, given that that Court has: (i) ruled on a question of law; (ii) found no ambiguity or conflict in the controlling statute and regulation; (iii) found that the regulation constitutes a prior and ongoing exercise of Treasury's discretion to limit the maximum amount of penalties despite amendments to statute authorizing larger penalties; and (iv) given that any future change in the existing regulation by Treasury would fall outside of the statute of limitations for making FBAR penalty assessments against Colliot, the ordinary remand rule for agency reconsideration does not apply on the specific facts of this case.

Only the amounts assessed in excess of the cap amount in regulation Treas. Reg. § 1010.820 are arbitrary and capricious under the Court's Order and the Court should reduce these amounts to the cap amounts that are authorized by law. In *United States v Bussell*, 2015 WL 9957826 (C.D. Ca. December 8, 2015) *aff'd.* 699 Fed. Appx 695 (9th Cir. 2017), *cert denied* –

S.Ct. --, 2018 WL 575038 (April 30, 2018), the IRS assessed a willful FBAR penalty against the defendant in the amount of $1,221,806.  However, the balance in defendant's foreign account was $2,241,027, and the court determined that under 31 U.S.C. § 5321(a)(5)(C) (for willful violation) the IRS could only assess a civil penalty of up to 50% of the balance of the account at issue. Consequently, the court reduced the amount the defendant's liability to $1,120,513 in its final judgment.[11]  Although *Bussell* involved a challenge to the amount based upon a violation of the Eighth Amendment Excessive Fines Clause, the same type of FBAR penalty was at issue, and the case is an example of another court simply reducing the amount of the penalty chosen by the IRS that it found to exceed the allowed maximum as a matter of law without invalidating the remaining penalty assessment and without remanding the case back to the IRS for further administrative proceedings under the APA.

Based on the foregoing, the aggregate amount of the 2007-2010 FBAR penalty assessments against Colliot remaining under the Court's May 16, 2018 Order is $570,314. ($445,314 from *Table 1* plus *$125,000 from Table 2*), and the case involving Colliot's liability for these penalties should proceed and should not be dismissed.

WHEREFORE, the United States requests that this Court deny Colliot's unsupported request to dismiss the entire action with or without prejudice.

---

[11] $2,241,027 * 50% =$1,120,513

JOHN F. BASH
United States Attorney

/s/ Herbert W. Linder
HERBERT W. LINDER
Ohio Bar No. 0065446
JON E. FISHER
State Bar No. 550177-MA
Attorney, Tax Division
Department of Justice
717 N. Harwood, Suite 400
Dallas, Texas 75201
(214) 880-9754
(214) 880-9774 (facsimile)
Herbert.W.Linder@usdoj.gov
Jon.Fisher@usdoj.gov

ATTORNEYS FOR UNITED STATES

**CERTIFICATE OF SERVICE**

    IT IS HEREBY CERTIFIED that service of the foregoing the United States' Additional

Brief has been made on June 14, 2018, by the court's electronic filing system to:

Richard D. Euliss
Carlton Fields Jorden Burt, P.A
1025 Thomas Jefferson St., NW
Suite 400 West
Washington, D.C. 20007

Lawrence Kemm
CARLTON FIELDS JORDEN BURT, P.A.
4221 W. Boy Scout Boulevard, Suite 1000
Tampa, Florida 33607

        /s/ Herbert W. Linder
        HERBERT W. LINDER